**MIDWEST RISK AGENCY, INC.,**
**Plaintiff and Appellant,**

v.

**Donald A. TYLER, Individually,**
**Defendant and Appellee,**

and

**Donald A. Tyler, Jr., Individually; and Tyler Agency, Inc., a South Dakota Corporation, Defendants.**

**Nos. 13581, 13597.**

Supreme Court of South Dakota.

Argued April 28, 1982.

Decided Dec. 15, 1982.

William A. Wyman, Rapid City, for plaintiff and appellant.

David J. Vickers of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for defendant and appellee.

HENDERSON, Justice.

### ACTION

Appellant Midwest Risk Agency, Inc. (Midwest) appeals from the trial court's judgment dismissing on the merits its action against appellee Donald A. Tyler, Sr. (Senior), after a two-day court trial. Midwest's complaint alleged that Senior, Tyler Agency, Inc. of Rapid City (Tyler Agency), and Donald A. Tyler, Jr. (Junior) owed Midwest $16,783.33. Premiums for five insurance policies sold by Tyler Agency were not forwarded to Midwest. Therefore, Midwest was forced to pay the premium amount to the insurer, National Indemnity Company (National), a Nebraska corporation, as Midwest was its general agent in South Dakota. Midwest obtained default judgments against Junior and Tyler Agency. Senior filed a notice of review to this appeal pertaining to collateral estoppel through bankruptcy court action. This issue need not be addressed herein. We affirm.

### FACTS

Midwest was the general agent in South Dakota of National. Senior established Tyler Insurance, Inc. of Sioux Falls in 1969. National made Senior its agent for South Dakota. Senior solicited insurance, forwarded the policies and premiums to Midwest, who in turn forwarded them to National. In 1974, Senior sold Tyler Insur-

ance, Inc. of Sioux Falls. Senior moved to Rapid City and established Tyler Agency in 1974 which continued to forward business to National via Midwest.

During 1976, Senior sold Tyler Agency to Junior. National and Midwest were unaware of the sale. Senior, individually, continued as National's agent. Subsequent to the sale, five insurance policies were placed with National through Junior. Junior failed to forward premiums on the policies to Midwest thereby forcing Midwest to pay the premiums to National as per their general agency agreement.

Tyler Agency filed bankruptcy in 1979; Senior was not a party to these proceedings. Midwest objected to the discharge of the unpaid premiums on the grounds, inter alia, that Junior and Tyler Agency failed to pay or account for the sums collected as premiums and that these sums had been wrongfully converted for personal use. Midwest's objection was dismissed with prejudice by the bankruptcy court. At the trial court proceedings, it was held that Tyler Agency's bankruptcy was immaterial to Midwest's maintenance of this action.

## ISSUES

### I.

WAS THE RELATIONSHIP BETWEEN MIDWEST AND SENIOR THAT OF PRINCIPAL AND AGENT WHICH THEREBY OBLIGATED SENIOR TO NOTIFY MIDWEST OF THE SALE OF TYLER AGENCY? WE HOLD THAT IT WAS NOT.

### II.

DID SENIOR'S ALLEGED INVOLVEMENT WITH TYLER AGENCY AFTER HE SOLD THE AGENCY CREATE AN IMPUTED AGENCY RELATIONSHIP BETWEEN SENIOR AND MIDWEST? WE HOLD THAT IT DID NOT.

### III.

DID A CONTINUING RELATIONSHIP EXIST BETWEEN SENIOR AND MIDWEST BASED ON AGREEMENTS MADE BY TYLER INSURANCE, INC. OF SIOUX FALLS? WE HOLD THAT IT DID NOT.

## DECISION

### I.

From the outset, we must inquire if Midwest and Senior had a principal-agency relationship. SDCL 58-1-2(2) defines an insurer as "every person engaged as indemnitor, surety, or contractor in the business of entering into contracts of insurance." National is the insurer herein. SDCL 58-1-2(16) defines agent as "any individual, firm or corporation appointed by an insurer to solicit and negotiate insurance contracts on its behalf, and if authorized to do so by the insurer, to effectuate, issue and countersign such contracts." Therefore, Midwest and Senior both served as agents of National. Senior concedes that he has individually been an appointed agent of National since 1971.

■ Although Senior transacted business with Midwest, the policies he sold were on behalf of National, the insurer. Senior specifically testified that when he was with Tyler Agency there were no contracts between himself and Midwest or between Tyler Agency and Midwest. While in Sioux Falls conducting Tyler Insurance, Inc. business affairs, Senior did have an agreement with Midwest as well as National. However, we emphasize again that said corporation had been sold. Therefore, that agreement is not dispositive nor germane to any treated issue herein. Without the existence of a principal-agency relationship with Midwest, either under state insurance laws (SDCL ch. 58-30), agency statutes (SDCL ch. 59) or contract law, Senior "owed no duty to [Midwest] to give notice of the fact that he had sold Tyler Agency, Inc. of Rapid City." Trial court's Finding of Fact VIII. Senior did solicit insurance for National, his principal. It was the solicitation by Senior of third persons, combined with Senior's appointment, which made National the principal. See SDCL 59-1-1; SDCL

59–1–4. Midwest merely served as a conduit between Senior and National. SDCL 59–1–1 provides: "Agency is the representation of one called the principal by another called the agent in dealing with third persons." *See also, Kasselder v. Kapperman,* 316 N.W.2d 628 (S.D.1982). Here, Senior represented National, rather than Midwest, and was National's agent. Midwest had a managing general agency contract with National. There was no written contract nor privity of contract of any kind between Midwest and Senior. True, Senior did some business with Midwest, but that did not make Senior an agent of Midwest. Thus, we hold that under South Dakota's insurance statutes (SDCL ch. 58), agency statutes (SDCL ch. 59), and contract law that a principal-agency relationship was lacking between Midwest and Senior.

Since Senior did not serve as Midwest's agent, Senior owed no duty to Midwest to provide it notice that Tyler Agency was sold. The trial court's finding of fact in this regard is without error.

## II.

Midwest next asserts that Senior's involvement with Tyler Agency after it was sold to Junior created an imputed agency relationship which rendered Senior liable for Midwest's damages. However, Findings of Fact XI, XII, XIII and XIV of the trial court respectively reveal:

At no time after June 1, 1976 did Donald A. Tyler, Sr. authorize the use of his name or his signature in the continued business of Tyler Agency, Inc. of Rapid City.

Donald A. Tyler, Sr. was in the office in Rapid City after the June 1, 1976, sale, but only to help with the transition after the sale.

The testimony established that a realtor was asked if the son, Donald A. Tyler, Jr. could take over his father's apartment since Donald A. Tyler, Sr. was leaving to move to Sioux Falls; that on occasion Donald A. Tyler, Sr. stopped only to collect old premiums and turn into the bookkeeper at Tyler Agency, Inc., not receiving anything for dropping them off; that Donald A. Tyler, Sr. conducted no insurance business with clients following the June 1, 1976, sale, wrote no checks on the Tyler Agency, Inc. account, and did not participate in the hiring or firing of any agency personnel.

While [appellant's] president Mr. Rogness assumed and relied upon Donald A. Tyler, Sr.'s involvement in both the Rapid City and the Sioux Falls businesses after June 1, 1976, (the Sioux Falls business had been sold by Donald A. Tyler, Sr. to Jerome Reinke in 1974), Mr. Rogness never visited the Rapid City business, and did not rely upon any certificates on the wall there, or the ownership of the oak desk located at the Rapid City business, or the Rapid City telephone directory or Polk directory. * * *

We recently examined the requirements for the creation of an ostensible agency relationship in *Kasselder, infra,* 316 N.W.2d at 630, wherein we held: "Ostensible agency for which a principal may be held liable must be traceable to the principal and cannot be established solely by the acts, declarations or conduct of an agent." Although we deal here with the question of the purported agent's liability, *Kasselder* remains applicable: "When the existence of an agency relationship is denied, the burden of proof is upon the party who affirms its existence." *Id.* Midwest has failed to meet its burden.

A trial court's findings of fact are not set aside unless they are clearly erroneous. SDCL 15–6–52(a); *In re Estate of Hobelsberger,* 85 S.D. 282, 181 N.W.2d 455 (1970). We have reviewed the record herein, and we hold that the evidence supports the trial court's findings. As such, Midwest's imputed agency argument fails.

## III.

Midwest asserts that the relationship it had with Senior at Tyler Insurance, Inc. of Sioux Falls continued in effect after Senior sold the Sioux Falls corporation and set up a Rapid City agency. We disagree.

128

Tyler Insurance, Inc. of Sioux Falls and Tyler Agency, located in Rapid City, were two separate and distinct corporations. Indeed, Midwest's president, Mr. Rogness, testified that he appreciated this corporate distinction. Although Tyler Insurance, Inc. of Sioux Falls entered into an agreement with National in September of 1971 authorizing Tyler Insurance, Inc. to be National's agent, this agreement did not include Midwest as a party; nor does Senior's signature or name appear on the agreement. Moreover, this agreement does not refer to Tyler Agency located in Rapid City nor to Junior or Senior as individuals.

Additionally, when Senior sold Tyler Insurance, Inc. of Sioux Falls, the sales agreement contained a five-year noncompetition provision thus indicating the distinctness of the two corporations. Therefore, we are unable to hold that a continuing relationship, based upon Tyler Insurance, Inc. of Sioux Falls agreements, existed between Senior and Midwest. It should be noted that assuming, arguendo, if a business nexus existed between the two corporations, such relationship would not, ipso facto, render Senior, an individual, liable for Midwest's damages.

In conclusion, probing Midwest's briefs and pleadings, we cannot cement together a clear theory of liability of Senior to Midwest. Our holdings being dispositive of this case on its merits, we need not reach Senior's collateral estoppel issue.

Affirmed.

FOSHEIM, C.J., WOLLMAN and MORGAN, JJ., and HALL, Circuit Judge, concur.

HALL, Circuit Judge, sitting for DUNN, J., disqualified.